UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| | ) No. 3:17-cr-00168 |
| v. | ) Judge Aleta Trauger |
| | ) |
| THOMAS AVERY GIBBS | ) |

## PLEA AGREEMENT

The United States of America, through Donald Q. Cochran, United States Attorney for the Middle District of Tennessee, and Assistant United States Attorneys Henry C. Leventis and Sara Beth Myers, and defendant, Thomas Avery Gibbs, through defendant's counsel, Benjamin Perry, pursuant to Rule 11(c)(1)(A) and (B) of the Federal Rules of Criminal Procedure, have entered into a Plea Agreement, the terms and conditions of which are as follows:

### Charges in This Case

1. Defendant acknowledges that he has been charged in the Indictment in this case with conspiracy to damage religious property and causing damage to religious property because of the religious character of that property in violation of Title 18, United States Code, Sections 371 and 247(a)(1) and 2, respectively.

### Charges to Which Defendant is Pleading Guilty

2. By this Plea Agreement, defendant agrees to enter a voluntary plea of guilty to Counts One and Two of the Indictment, charging conspiracy to damage religious property and causing damage to religious property because of the religious character of that property.

## Penalties

3. The parties understand and agree that the offenses to which defendant will enter a plea of guilty carry the following maximum penalties: 1 year of incarceration, 1 year of supervised release, a $100,000 fine and a $25 special assessment per count (totaling $50). Defendant further understands that the Court must order restitution to the victims of the offense in an amount determined by the Court. Defendant also understands that a defendant who is not a United States citizen may be removed from the United States, denied citizenship, and denied admission to the United States in the future, regardless of whether the defendant currently has lawful temporary or permanent resident status.

## Acknowledgements and Waivers Regarding Plea of Guilty

### Nature of Plea Agreement

4. This Plea Agreement is entirely voluntary and represents the entire agreement between the United States Attorney and defendant regarding defendant's criminal liability in case 3:17-cr-00168.

5. Defendant understands that by pleading guilty he surrenders certain trial rights, including the following:

    a. If defendant persisted in a plea of not guilty to the charge against him, he would have the right to a public and speedy trial. Defendant has a right to a jury trial, and the trial would be by a judge rather than a jury only if defendant, the government, and the Court all agreed to have no jury.

    b. If the trial were a jury trial, the jury would be composed of twelve laypersons selected at random. Defendant and his attorney would have a say in who the jurors would be by removing prospective jurors for cause, or without cause by exercising

so-called peremptory challenges. The jury would have to agree unanimously before it could return a verdict of either guilty or not guilty. The jury would be instructed that defendant is presumed innocent; that the government bears the burden of proving defendant guilty of the charges beyond a reasonable doubt; and that it must consider each count of the indictment against the defendant separately.

c. If the trial were held by the judge without a jury, the judge would find the facts and determine, after hearing all the evidence, whether or not the judge was persuaded of the defendant's guilt beyond a reasonable doubt.

d. At a trial, whether by a jury or a judge, the government would be required to present its witnesses and other evidence against defendant. Defendant would be able to confront those government witnesses and his attorney would be able to cross-examine them. In turn, defendant could present witnesses and other evidence on his own behalf. If the witnesses for defendant would not appear voluntarily, he could require their attendance through the subpoena power of the Court.

e. At a trial, defendant would have a privilege against self-incrimination so that he could testify or decline to testify, and no inference of guilt could be drawn from his refusal to testify.

6. Defendant understands that by pleading guilty he is waiving all of the trial rights set forth in the prior paragraph. Defendant's attorney has explained those rights to him, and the consequences of his waiver of those rights.

### Factual Basis

7. Defendant will plead guilty because he is in fact guilty of Counts One and Two contained in the Indictment. In pleading guilty, defendant admits the following facts and that those

3

facts establish his guilt beyond a reasonable doubt:

Defendants **CHARLES DWIGHT STOUT, III** and **THOMAS AVERY GIBBS** resided in Murfreesboro, Tennessee within the Middle District of Tennessee.

The Islamic Center of Murfreesboro (hereinafter referred to as "the ICM") was an Islamic community organization located in Murfreesboro, Tennessee.

The ICM's stated purpose was building bridges of understanding and tolerance through maintaining open lines of communication with neighbors and community members.

The ICM included a mosque that held daily prayer services for practitioners of the Islamic faith.

The Islamic faith prohibited the consumption of pork.

Title 18, United States Code Section 247 prohibited the intentional defacement or damage of any religious real property because of the religious character of that property when such actions are in or affect interstate or foreign commerce. Violations of 18 U.S.C. § 247 were matters within the jurisdiction of a department or agency of the United States, namely the Federal Bureau of Investigation.

On or about July 10, 2017, defendants **CHARLES DWIGHT STOUT, III** and **THOMAS AVERY GIBBS** conspired to and did in fact vandalize the ICM.

In or about the week of July 17, 2017, defendant **CHARLES DWIGHT STOUT, III** admitted his involvement in the ICM vandalism to J.K., an individual known to the grand jury, and instructed J.K. not to tell anyone.

In or about the week of July 10, 2017, defendant **THOMAS AVERY GIBBS** admitted his involvement in the ICM vandalism to A.K., an individual known to the grand jury.

On or about July 10, 2017, in the Middle District of Tennessee and elsewhere, defendants **CHARLES DWIGHT STOUT, III** and **THOMAS AVERY GIBBS** did willfully, knowingly, and unlawfully combine, conspire, confederate, and agree with one another, to commit one or more offenses against the United States, including defacing, damaging, or destroying, in and affecting interstate commerce, religious real property, to wit, the ICM, because of the religious character of that property, in violation of Title 18, United States Code, Section 247(a)(1).

The manner and means by which defendants **CHARLES DWIGHT STOUT, III** and **THOMAS AVERY GIBBS** sought to accomplish and carry out the conspiracy to deface and damage religious real property included purchasing raw bacon to use in defacing religious real property, retrieving spray paint to use in damaging and defacing religious real property, and using masks to conceal their identities.

In furtherance of the above conspiracy and to affect the objects thereof, defendants **CHARLES DWIGHT STOUT, III** and **THOMAS AVERY GIBBS** committed or caused one or more of the following overt acts to be committed within the Middle District of Tennessee and elsewhere, including, among others:

a. On or about July 10, 2017, defendants **CHARLES DWIGHT STOUT, III** and **THOMAS AVERY GIBBS** purchased raw bacon at a Kroger grocery store in Murfreesboro.

b. In order to purchase said bacon, on or about July 10, 2017, defendants **CHARLES DWIGHT STOUT, III** and **THOMAS AVERY GIBBS** utilized a SunTrust Bank debit card belonging to **THOMAS AVERY GIBBS**, which caused the transmission of writings, signs and signals by means of wire communication in interstate commerce; that is, the debit card transaction caused the transmission of data related thereto from the Middle District of Tennessee to locations outside the State of Tennessee.

5

c. On or about July 10, 2017, defendants **CHARLES DWIGHT STOUT, III** and **THOMAS AVERY GIBBS** retrieved two masks and a can of spray paint from the residence of defendant **CHARLES DWIGHT STOUT, III.** One of the masks retrieved by defendant **CHARLES DWIGHT STOUT, III** from his residence was a World War II era Soviet Russian gas mask.

d. On or about July 10, 2017, in furtherance of their plan to damage and deface the ICM, defendants **CHARLES DWIGHT STOUT, III** and **THOMAS AVERY GIBBS** drove to the ICM, put on masks to conceal their identities and spelled out "Fuck Allah" in bacon and in spray paint at several locations on or near the entrance to the ICM.

e. On or about July 10, 2017, defendant **THOMAS AVERY GIBBS** also placed bacon on the door handles to the entrance of the ICM.

f. Between on or about July 10, 2017, and on or about August 9, 2017, defendants **CHARLES DWIGHT STOUT, III** and **THOMAS AVERY GIBBS** hid the masks they used during the ICM vandalism in a broken-down truck.

g. Between on or about July 10, 2017, and on or about August 9, 2017, defendant **CHARLES DWIGHT STOUT, III** threw out the clothes and shoes he wore during the ICM vandalism as well as wrappers from the bacon and the spray paint can that he and **THOMAS AVERY GIBBS** used to deface and damage the ICM.

In violation of Title 18, United States Code, Section 371.

On or about July 10, 2017, in the Middle District of Tennessee, defendants **CHARLES DWIGHT STOUT, III** and **THOMAS AVERY GIBBS** aided and abetted by each other, did in and affecting interstate commerce intentionally deface, damage, or destroy religious real property, to wit, the ICM, because of the religious character of that property. In violation of Title 18, United States Code, Sections 247(a)(1) and 2.

6

This statement of facts is provided to assist the Court in determining whether a factual basis exists for defendant's plea of guilty and to assess relevant conduct for purposes of the United States Sentencing Guidelines. The statement of facts does not contain each and every fact known to defendant and to the United States concerning defendant's and/or others' involvement in the offense conduct and other matters.

## Sentencing Guidelines Calculations

8. The parties understand that the Court will take account of the United States Sentencing Guidelines (hereinafter "U.S.S.G."), together with the other sentencing factors set forth at 18 U.S.C. § 3553(a), and will consider the U.S.S.G. advisory sentencing range in imposing defendant's sentence. The parties agree that the U.S.S.G. to be considered in this case are those effective November 1, 2016.

9. For purposes of determining the U.S.S.G. advisory sentencing range, the United States and defendant recommend to the Court, pursuant to Rule 11(c)(1)(B), the following:

    a. Offense Level Calculations.

        i. The base offense level for Counts One and Two and relevant conduct is twelve (12), pursuant to U.S.S.G. § 2H1.1.

        ii. Assuming defendant clearly demonstrates acceptance of responsibility, to the satisfaction of the Government, a 2-level reduction will be warranted, pursuant to U.S.S.G. § 3E1.1(a).

    b. Criminal History Category. At the present time, the parties are not aware that defendant has prior criminal convictions. The parties, therefore, expect that the defendant will have a Criminal History Category I. However, <u>the parties make no agreement as to the defendant's Criminal History Category</u>.

*TMG*
*BH*

c.  Therefore, the parties agree to recommend to the Court a final offense level, prior to any downward departure, of 10 (the "<u>Recommended Offense Level</u>"). Defendant understands that the offense level as ultimately determined by the Court prior to any downward departure (the "court-determined offense level)" may be different from the Recommended Offense Level. Defendant likewise understands that the guidelines range as ultimately determined by the Court prior to any downward departure (the "court-determined guidelines range") may be based on an offense level different from the Recommended Offense Level.

d.  Defendant is aware that the Recommended Offense Level is a prediction, not a promise, and is not binding on the Probation Office or the Court. Defendant understands that the Probation Office will conduct its own investigation and make its own recommendations, that the Court ultimately determines the facts and law relevant to sentencing, that the Court's determinations govern the final guidelines calculations, and that the Court determines both the final offense level and the final guidelines range. Accordingly, the validity of this Plea Agreement is not contingent upon the Probation Officer's or the Court's concurrence with the above calculations. In the event that the Probation Office or the Court contemplates any U.S.S.G. adjustments, departures, or calculations different from those recommended above, the parties reserve the right to answer any inquiries and to make all appropriate arguments concerning the same. Defendant further acknowledges that if the Court does not accept the guidelines calculations of the parties, defendant will have no right to withdraw his guilty plea.

e.  A downward departure from the court-determined guideline range may be appropriate under U.S.S.G. § 5K2.0, as set forth herein.

## Agreements Relating to Sentencing

10. It is understood by the parties that the Court is neither a party to nor bound by this Plea Agreement and, after consideration of the U.S.S.G., may impose the maximum penalties as set forth above. Defendant further acknowledges that if the Court does not accept the sentencing recommendation of the parties, defendant will have no right to withdraw his guilty plea. Similarly, defendant understands that any recommendation by the Court related to location of imprisonment is not binding on the Bureau of Prisons.

11. The parties recommend a downward departure pursuant to U.S.S.G. § 5K2.0(2)(A) and 18 U.S.C. 3553(b) in relation to the defendant's public apology to members of the ICM community at a religious service on the property that the defendant damaged. This apology was not related to plea discussions with the United States. In the absence of such a departure, defendant's predicted range, with acceptance, would be 6-12 months of incarceration. The parties recommend a sentence of one year of supervised release in lieu of incarceration, payment of restitution to the victims at the amount to be set by the Court, and payment of the $25 special assessment, per count.

12. Regarding restitution, the parties acknowledge that the amount of restitution will be an amount determined by the Court and that pursuant to Title 18, United States Code, Section 3663A, the Court must order defendant to make restitution in this amount, minus any credit for funds repaid prior to sentencing. Unless the Court orders otherwise, restitution shall be due immediately.

13. Defendant agrees to pay the special assessment of $25 (per count) at the time of sentencing to the Clerk of the U.S. District Court.

9

## Presentence Investigation Report/Post-Sentence Supervision

13. Defendant understands that the United States Attorney's Office, in its submission to the Probation Office as part of the Pre-Sentence Report and at sentencing, shall fully apprise the District Court and the United States Probation Office of the nature, scope, and extent of defendant's conduct regarding the charges against him, as well as any related matters. The government will make known all matters in aggravation and mitigation relevant to the issue of sentencing, including the nature and extent of defendant's cooperation.

14. Defendant agrees to execute truthfully and completely a Financial Statement (with supporting documentation) prior to sentencing, to be provided to and shared among the Court, the United States Probation Office, and the United States Attorney's Office regarding all details of his financial circumstances, including his recent income tax returns as specified by the Probation Officer. Defendant understands that providing false or incomplete information, or refusing to provide this information, may be used as a basis for denial of a reduction for acceptance of responsibility pursuant to U.S.S.G. § 3E1.1 and enhancement of his sentence for obstruction of justice under U.S.S.G. § 3C1.1, and may be prosecuted as a violation of Title 18, United States Code, Section 1001, or as a contempt of the Court.

15. This Plea Agreement concerns criminal liability only. Except as expressly set forth in this Plea Agreement, nothing herein shall constitute a limitation, waiver, or release by the United States or any of its agencies of any administrative or judicial civil claim, demand, or cause of action it may have against defendant or any other person or entity. The obligations of this Plea Agreement are limited to the United States Attorney's Office for the Middle District of Tennessee

10

Case 3:17-cr-00168    Document 59    Filed 07/13/18    Page 10 of 14 PageID #: 132

and cannot bind any other federal, state, or local prosecuting, administrative, or regulatory authorities, except as expressly set forth in this Plea Agreement.

16. Defendant understands that nothing in this Plea Agreement shall limit the Internal Revenue Service (IRS) in its collection of any taxes, interest, or penalties from defendant.

### Entry of Guilty Plea

17. The parties jointly request that the Court accept the defendant's plea of guilty as set forth in this Plea Agreement and enter an order reflecting the acceptance of the plea while reserving acceptance of this Plea Agreement until receipt of the pre-sentence report and sentencing.

### Waiver of Appellate Rights

18. Regarding the issue of guilt, defendant hereby waives all (i) rights to appeal any issue bearing on the determination of whether he is guilty of the crime(s) to which he is agreeing to plead guilty; and (ii) trial rights that might have been available if he exercised his right to go to trial. Regarding sentencing, Defendant is aware that 18 U.S.C. § 3742 generally affords a defendant the right to appeal the sentence imposed. Acknowledging this, defendant knowingly waives the right to appeal any sentence within or below the Recommended Guidelines Range. Defendant also knowingly waives the right to challenge the sentence imposed in any motion pursuant to 18 U.S.C. § 3582(c) and in any collateral attack, including, but not limited to, a motion brought pursuant to 28 U.S.C. § 2255 and/or § 2241. However, no waiver of the right to appeal, or to challenge the adjudication of guilt or the sentence imposed in any collateral attack, shall apply to a claim of involuntariness, prosecutorial misconduct, or ineffective assistance of counsel. Likewise, the government waives the right to appeal any sentence: (i) within or above the Recommended Guidelines Range; or (ii) below such guideline range if the government has moved for a downward departure pursuant to U.S.S.G. §5K2.0.



## Other Terms

19. Defendant agrees to cooperate with the United States Attorney's Office in collecting any unpaid fine and restitution for which defendant is liable, including providing financial statements and supporting records as requested by the United States Attorney's Office. Defendant further agrees that any monetary penalties imposed by the Court will be subject to immediate enforcement as provided for in 18 U.S.C. § 3613, and submitted to the Treasury Offset Programs so that any federal payment or transfer of returned property the defendant receives may be offset and applied to federal debts but will not affect the periodic payment schedule.

20. Defendant agrees to cooperate with the IRS in any tax examination or audit of defendant that directly or indirectly relates to or arises out of the course of conduct defendant has acknowledged in this Plea Agreement, by transmitting to the IRS original records or copies thereof, and any additional books and records that the IRS may request. Nothing in this paragraph precludes defendant from asserting any legal or factual defense to taxes, interest, and penalties that may be assessed by the IRS.

21. Should defendant engage in additional criminal activity after he has pled guilty but prior to sentencing, defendant shall be considered to have breached this Plea Agreement, and the government, at its option, may void this Plea Agreement.

## Conclusion

22. Defendant understands that the Information and this Plea Agreement have been or will be filed with the Court, will become matters of public record, and may be disclosed to any person.

23. Defendant understands that his compliance with each part of this Plea Agreement extends until such time as he is sentenced, and failure to abide by any term of the Plea Agreement



is a violation of the Plea Agreement. Defendant further understands that in the event he violates this Plea Agreement, the government, at its option, may move to vacate the Plea Agreement, rendering it null and void, and thereafter prosecute defendant not subject to any of the limits set forth in this Plea Agreement, or may require defendant's specific performance of this Plea Agreement.

24. Defendant and his attorney acknowledge that no threats have been made to cause defendant to plead guilty.

25. No promises, agreements, or conditions have been entered into other than those set forth in this Plea Agreement, and none will be entered into unless memorialized in writing and signed by all of the parties listed below.

26. <u>Defendant's Signature:</u> I hereby agree that I have consulted with my attorney and fully understand all rights with respect to the pending Indictment. Further, I fully understand all rights with respect to the provisions of the Sentencing Guidelines that may apply in my case. I have read this Plea Agreement and carefully reviewed every part of it with my attorney. I understand this Plea Agreement, and I voluntarily agree to it.

Date: 7/13/18

_____
Thomas Avery Gibbs
Defendant

27. <u>Defense Counsel Signature:</u> I am counsel for defendant in this case. I have fully explained to defendant his rights with respect to the pending Indictment. Further, I have reviewed the provisions of the Sentencing Guidelines and Policy Statements, and I have fully explained to defendant the provisions of those guidelines that may apply in this case. I have reviewed carefully every part of this Plea Agreement with defendant. To my knowledge, defendant's decision to enter into this Plea Agreement is an informed and voluntary one.

Date: 7/13/18

_____
Benjamin Perry
Attorney for Thomas Avery Gibbs

Respectfully submitted,

DONALD Q. COCHRAN
United States Attorney

By: _____
Sara Beth Myers
Assistant United States Attorney

_____ w/ perm SBM
Henry C. Leventis
Deputy Criminal Chief

TAG
BP